UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CONSTANCE WATERWORTH, as mother and next friend of CHRIST SAM MESSINO, IV, a minor, and as Special Administrator of the ESTATE OF CHRIST SAM MESSINO, III,<br><br>      Plaintiff,<br><br>    v.<br><br>CITY OF JOLIET, WILLIAM OTIS, and VON STEIN,<br><br>      Defendants. | No. 17 C 4990<br><br>Judge Jorge L. Alonso |

## MEMORANDUM OPINION AND ORDER

After Christ Sam Messino, III ("Messino") was arrested and, ten month later, died from a heart attack, plaintiff Constance Waterhouse ("Waterhouse")[1] filed against defendant City of Joliet, William Otis ("Otis") and Von Stein ("Stein") a seven-count second amended complaint asserting violations of Messino's constitutional rights and a claim for wrongful death. Defendants filed a motion [28] to dismiss the entire complaint. For the reasons set forth below, the Court grants in part and denies in part the motion to dismiss.

## I. BACKGROUND

The events from which this lawsuit arises began on July 5, 2015, when Messino was driving "perfectly" without committing any traffic violations. At the time, defendant Officers

---

[1] Waterhouse originally brought suit individually, as well, but in the second amended complaint, she dropped her individual claims. She now is plaintiff only as mother and next friend of Christ Sam Messino, IV, decedent's heir, and as Special Administrator of the Estate of Christ Sam Messino, III.

Otis and Stein were patrolling in a squad car with a broken audio recorder, but, unbeknownst to those officers, the squad car's video recorder was functioning properly.

According to the second amended complaint, the squad car's video shows Messino proceeding lawfully through the intersection of Chicago Street and Interstate 80 in Joliet on that day. Despite the video evidence, Officers Otis and Stein, who later claimed Messino had run a red light, followed plaintiff for 1.5 miles until he reached the driveway of the home he shared with plaintiff, Constance Waterworth (Messino's girlfriend) and their son, Christ Sam Messino, IV.

Officers Otis and Stein turned on their emergency lights. As Messino was opening the door to exit the vehicle, Officer Stein rushed to the driver's-side door and slammed the door (shut, presumably) to prevent Messino from exiting. Plaintiff alleges that Messino was "[c]oerced into believing" the officers had the legal authority to be there. Messino told the officers he did not possess a valid driver's license. (Sec. Am. Complt. ¶ 25).

Officers Otis and Stein arrested Messino and transported him to the Will County Adult Detention facility, where he was detained based on the Officers' sworn complaints. The Officers alleged in the sworn complaints that Messino had driven on a suspended license, operated an uninsured motor vehicle and disobeyed a traffic control device.

Messino was held until July 7, 2015 at 10:00 p.m., when he was released on bond. In the meantime, he had missed three days of work and lost his job. Messino was unable to find other work and, ultimately, lost the home he had lived in.

Before he was released on bond, Messino was charged with driving on a revoked or suspended license. During pre-trial discovery on that charge, the State's Attorney of Will County produced a video, which showed Messino had not run a red light at the intersection of

Chicago Street and Interstate 80. Messino's attorney moved to suppress the evidence incident to the arrest, and the judge granted the motion on or about April 14, 2016. The State dismissed the charges about two weeks later, on April 29, 2016.[2]

About a week later, on May 4, 2016, Messino suffered a heart attack and died, leaving behind Christ Sam Messino IV as his sole heir. Plaintiff alleges that Messino began experiencing hypertension and anxiety after defendants arrested him. They allege that the arrest was the proximate cause of Messino's heart attack.

Based on these allegations, plaintiff seeks relief under § 1983 for violations of Messino's constitutional rights (Counts I through V). Plaintiff also asserts two state-law claims, one for malicious prosecution (Count VI) and one for wrongful death (Count VII). Defendants move to dismiss all of plaintiff's claims.

## II. STANDARD ON A MOTION TO DISMISS

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a claim must be plausible. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Allegations that are as consistent with lawful conduct as

---

[2] The second amended complaint alleges that the dismissal happened on April 29, 2017, but plaintiff's brief makes it clear that it occurred in 2016.

3

they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In considering a motion to dismiss, the Court accepts as true the factual allegations in the complaint and draws permissible inferences in favor of the plaintiff. *Boucher v. Finance Syst. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018). Conclusory allegations "are not entitled to be assumed true," nor are legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 680 & 681 (2009) (noting that a "legal conclusion" was "not entitled to the assumption of truth[;]" and rejecting, as conclusory, allegations that "'petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement"). The notice-pleading rule "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-679.

### III. DISCUSSION

#### A. Plaintiff's Fourth Amendment and malicious prosecution claims

Plaintiff brings a number of claims for violation of Messino's constitutional rights under the Fourth Amendment and a related state-law claim for malicious prosecution. In Count I, plaintiff alleges the defendant Officers deprived Messino of his rights to be free from unreasonable searches and seizures. In Count II, plaintiff alleges that the Officers subjected Messino to excessive force. In Count III, plaintiff alleges that the Officers subjected Messino to malicious prosecution in violation of the Fourth Amendment. In Count VI, plaintiff asserts a similar claim for malicious prosecution under state law.

Defendants argue that all of these counts should be dismissed, because plaintiff has alleged probable cause for Messino's arrest. The Court agrees with defendants that "probable cause is an absolute defense to any claim under Section 1983 against police officers for wrongful

4

arrest, false imprisonment, or malicious prosecution." *Mustafa v. City of Chi.*, 442 F.3d 544, 547 (7th Cir. 2006). It is also a defense to a state-law claim for malicious prosecution. *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007). Such claims are barred by probable cause "even where the defendant officers allegedly acted upon a malicious motive." *Mustafa*, 442 F.3d at 547. Although a plaintiff need not plead around an affirmative defense, a court may dismiss a claim based on an affirmative defense when the plaintiff "plead[s] himself out of court by alleging (and thus admitting) the ingredients of a defense." *Chicago Bldg Design, PC v. Mongolian House, Inc.*, 770 F.3d 610, 613-614 (7th Cir. 2014); *United States Gypsum v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003).

In arguing that the plaintiff has alleged probable cause, defendants point to plaintiff's allegation that Messino told the Officers he did not have a valid driver's license. (Sec. Am. Complt. ¶ 25). Driving without a license is a misdemeanor under Illinois law. 625 ILCS 5/6-101. Thus, the Court agrees that plaintiff has alleged (and thus admitted) that the Officers had probable cause once Messino told them he did not have a valid license.

Plaintiff argues that her claims are not barred by her allegation that Messino told the Officers he had no driver's license. Plaintiff argues that Messino's statement was not freely given and that the Officers lacked probable cause to stop Messino in the first place. In essence, plaintiff is arguing that Messino's statement cannot provide probable cause, because Messino's statement is the fruit of the poisonous tree. The Court disagrees. The exclusionary rule does not apply to § 1983 claims against police officers. *Vaughn v. Chapman*, 662 Fed.Appx. 464, 467 (7th Cir. 2016) ("The exclusionary rule does not apply in a § 1983 suit against police officers."); *Townes v. City of N.Y.*, 176 F.3d 138, 149 (2d Cir. 1999) ("The individual defendants here lacked probable cause to stop and search [plaintiff], but they certainly had probable cause to arrest him

5

upon discovery of the handguns in the passenger compartment of the taxicab in which he was riding. The lack of probable cause to stop and search does not vitiate the probable cause to arrest, because (among other things) the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant."); *Martin v. City of Chi.*, Case No. 15-cv-4576, 2017 WL 56633 at *4 (N.D. Ill. Jan. 5, 2017).

Thus, even though plaintiff does not approve of the way the Officers obtained the evidence that Messino had no license to drive, that "does not undermine its relevance to the question of probable cause." *Vaughn v. Chapman*, 662 Fed.Appx. at 467. As the Seventh Circuit explained in *Vaughn*:

> [R]egardless of whether [defendants] had justification for searching the trunk of the car [plaintiff] was driving, their discovery [of a firearm in the trunk] established probable cause for the charge and defeated any claim of malicious prosecution.

*Vaughn*, 662 Fed.Appx. at 467. Judge St. Eve reached the same conclusion in *Martin*. *Martin v. City of Chi.*, 2017 WL 56633 at *3-5. There, the court concluded that even if defendants lacked probable cause to search plaintiff's car, once that search uncovered an illegal weapon, defendants had probable cause to arrest plaintiff. *Martin*, 2017 WL 56633 at 5. Accordingly, the plaintiff could not recover for his 65-day incarceration. *Id.*

The same is true here. Although the initial stop of Messino is alleged to be unlawful, it is specifically alleged by plaintiff that Messino told the Officers he did not have a valid license. Messino's admission gave the Officers probable cause to arrest Messino, which means the Officers have an absolute defense to plaintiff's claims for false arrest, unlawful detention and malicious prosecution stemming from that arrest. Accordingly, Counts III and VI are dismissed with prejudice.

The Supreme Court's decision in *Manuel* does not change the result. *Manuel v. City of Joliet, Ill.*, 137 S.Ct. 911(2017). In *Manuel*, plaintiff was able to state a claim under § 1983 for violation of his Fourth Amendment rights where the detention was "unreasonable" because "it was based solely on false evidence, rather than supported by probable cause." *Manuel*, 137 S.Ct. at 917. Even after *Manuel*, probable cause still bars a claim for malicious prosecution. *See Blocker v. City of Chi.*, Case No. 17-cv-55, 2017 WL 3278323 at * 4 (N.D. Ill. Aug. 2, 2017) (where it was undisputed that police "found a gun and cocaine in the residence," the "arresting officers could not be liable for a Fourth Amendment violation for [plaintiff's] detention even though the search warrant was later found to be invalid and the case against [plaintiff] was dismissed").

Although plaintiff's allegation that Messino told the Officers he had no driver's license provides a defense to malicious prosecution and false arrest, it does not provide an absolute defense to Counts I and II. In Count II, plaintiff alleges that the Officers used excessive force. Probable cause is not a defense to a claim for excessive force. *See McWilliams v. McWilliams*, Case No. 06C 3060, 2007 WL 1141613 at *7 (N.D. Ill. April 16, 2007). In any case, the Court reads the second amended complaint as alleging excessive force when the Officer slammed Messino's car door shut, which occurred before the Officers had probable cause to arrest Messino, i.e., before Messino admitted having no license.

In Count I, plaintiff alleges that defendant Officers deprived Messino of his constitutional right to be free from unreasonable searches and seizures. The Fourth Amendment to the Constitution protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. Amend IV. An automobile stop by the police constitutes a seizure and, generally, is considered reasonable so long as "the police have probable

cause to believe that a traffic violation has occurred." *Carmichael v. Village of Palatine, Ill.*, 605 F.3d 451, 456 (7th Cir. 2010) (quoting *Whren v. United States*, 517 U.S. 806, 810 (1996)). The Court reads Count I to be alleging that the initial stop of Messino (before he admitted not having a driver's license) was an unreasonable seizure. Plaintiff has alleged that Messino was driving perfectly and did not run the red light at the intersection of Chicago Street and Interstate 80. That suffices to state a claim for relief under § 1983 in Count I.

Defendants also move to dismiss Counts I and II and the basis of qualified immunity, "which protects government officials from liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Purvis v. Oest*, 614 F.3d 713, 720 (7th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In determining whether a defendant is entitled to qualified immunity, the Court considers whether plaintiff has shown a violation of a constitutional right and whether the constitutional right "was clearly established at the time of the alleged violation." *Purvis*, 614 F.3d at 720. The rights to be free from unreasonable searches and seizures and excessive force, as alleged in the complaint, were firmly established when the alleged events took place. The Court will not dismiss the claims based on qualified immunity at this time.

### B. Plaintiff's due process claim

In Count IV, plaintiff alleges that defendants "deliberately fabricated false reports and other evidence, thereby misleading and misdirecting the criminal prosecution" of Messino and "denying him his constitutional right to a fair trial, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution." (Sec. Am. Complt. ¶¶ 75, 77). The Fourteenth Amendment protects against deprivations of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV.

Such a claim obviously requires a deprivation of liberty. *Cairel v. Alderden*, 821 F.3d 823, 831 (7th Cir. 2016). The Seventh Circuit has held that "a plaintiff who has been released on bond following his arrest and who was later acquitted at trial could not maintain a due process claim for fabrication of evidence" because no liberty interest was implicated. *Cairel*, 821 F.3d at 831 (citing *Saunders-El v. Rohde*, 778 F.3d 556, 561 (7th Cir. 2015)). In *Cairel*, the plaintiff was released on bond after a few days in jail and, ultimately, had the charges against him dropped. *Cairel*, 821 F.3d at 829 & 830. The Seventh Circuit concluded the plaintiff could not prevail on a due process claim for fabricated evidence, because, under those circumstances, plaintiff could not establish that he was deprived of a liberty interest. *Cairel*, 821 F.3d at 561. This case is the same. As in *Cairel*, Messino did not suffer a deprivation of his liberty when he was held for a few days until he was released on bond. Like the plaintiff in *Cairel*, the charges against Messino were ultimately dropped. Thus, Messino was not deprived of a liberty interest.

Plaintiff argues, though, that Messino was deprived of his liberty interest in his occupation. The cases plaintiff cites do not suggest that Messino can bring such a claim. In *Wroblewski v. City of Washburn*, which plaintiff cites, the Seventh Circuit noted that the liberty to engage in a trade or occupation is not a right to a specific job; rather, to have a protected liberty interest, a plaintiff must have been excluded from an entire "'occupation,' like the practice of law." *Wroblewski*, 965 F.2d 452, 455 (7th Cir. 1992). Here, plaintiff alleges that Messino lost only his particular job, which does not suffice. The bigger problem with plaintiff's claim is that the allegations in the second amended complaint establish that Messino had sufficient process. In the other case plaintiff cites, *Barrow v. City of Chi.*, Judge St. Eve dismissed the plaintiff's occupational liberty claim. *Barrow*, Case No. 13 C 8779, 2014 WL 4477945 at *4 (N.D. Ill. Sept. 11, 2014). The court explained that even if occupational liberty

9

were actionable in a police misconduct case, the plaintiff "received all the process he was due," which was a chance to clear his name. *Id*. It is just so here. Messino had a chance to refute the criminal charges and, in fact, got them dropped. (Sec. Am. Complt. ¶¶ 36-39). That is sufficient process, and Count IV is dismissed with prejudice.

### C. Plaintiff's *Monell* claim

Plaintiff seeks to hold defendant liable under *Monell v. Department of Soc. Serv. of N.Y.*, 436 U.S. 658 (1978), where the Supreme Court set out the circumstances under which a municipality could be liable under § 1983 for constitutional violations. A municipality cannot be held liable under § 1983 based on *respondeat superior* liability. *Monell*, 436 U.S. at 691. Instead, a municipality can be liable only if the injury was the result of the municipality's policy or custom. *Monell*, 436 U.S. at 694.

To state a claim under *Monell* in order to hold the City of Joliet liable for the actions of defendant Officers that are alleged in Counts I and II, plaintiff must include sufficient factual allegations to allow a court "to draw the reasonable inference that the City established a policy or practice" that resulted in the seizure of persons in vehicles without probable cause and the use of excessive force during such seizures. *McCauley v. City of Chi.*, 671 F.3d 611, 618 (7th Cir. 2011). Nearly all of plaintiff's *Monell* allegations are boilerplate legal conclusions, which are disregarded. *McCauley*, 671 F.3d at 617 (citing *Iqbal*, 129 S.Ct. at 1915). What is left after disregarding the legal conclusions are plaintiff's allegations about what happened to Messino specifically and an allegation that defendant City of Joliet failed "to have a system in place that properly verifies the validity of motor vehicle violations based on squad car video." (Sec. Am. Complt. ¶ 86). This is not enough to create an inference of a policy or custom.

Accordingly, Count V is dismissed without prejudice for failure to state a claim.

### D. Plaintiff's claim for wrongful death

In Count VII, plaintiff alleges that defendants are liable for wrongful death. Defendants move to dismiss this claim as barred by the one-year statute of limitations for claims against "a local entity or its employees." 745 ILCS 10/8-101(a). Given that plaintiffs need not plead around affirmative defenses and given this plaintiff's argument that the statute of limitations will be tolled due to the age of Christ Sam Messino, IV, the Court will not dismiss this count based on the statute of limitations at this time.

### IV. CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part defendants' motion [28] to dismiss. The Court dismisses with prejudice Counts III, IV and VI. The Court dismisses Count V without prejudice. Plaintiff is granted leave to file an amended complaint, should she choose to do so, by July 9, 2018. Status hearing previously set for June 27, 2018 is stricken and reset to July 12, 2018 at 9:30 a.m. Parties shall file a joint status report by July 11, 2018.

**SO ORDERED.**   **ENTERED:** June 11, 2018

_____
**JORGE L. ALONSO**
**United States District Judge**